[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 17, 2007
THOMAS K. KAHN
CLERK

----------------------------------------

No. 06-15915
Non-Argument Calendar

----------------------------------------

D.C. Docket No. 04-00172-CV-DF-5

CHARLES DOE,

Plaintiff-Appellee,

versus

GEORGIA DEPARTMENT OF CORRECTIONS, et al.,

Defendants,

GENE A. SCROGGY,
Individually and in his former official capacity as Warden of Frank Scott State
Prison,
AUBREY JONES,
Individually and in his official capacity of Deputy Warden of Security for Frank
Scott State Prison,
TOM McELHENNEY,
Individually and in his official capacity as Deputy Warden of Care and Treatment
for Frank Scott State Prison,
GLORIA NICHOLSON,
Captain, Individually and in her official capacity as an employee of the Georgia
Department of Corrections serving as a supervisory officer of Frank Scott State
Prison, a.k.a. Gloria Chester.

CARL EVANS,
Captain, Individually and in his official capacity as an employee of the Georgia Department of Corrections serving as a supervisory officer of Frank Scott State Prison,
DENNIS HOLSEY,
Sergeant, Individually and in his official capacity as an employee of the Georgia Department of Corrections serving as a supervisory officer of Frank Scott State Prison,
DENNIS KNIGHT,
Sergeant, Individually and in his official capacity as an employee of the Georgia Department of Corrections serving as a supervisory officer of Frank Scott State Prison,

                                                    Defendants-Appellants.

-------------------------------------------------------------------
Appeal from the United States District Court
for the Middle District of Georgia
-------------------------------------------------------------------

**(August 17, 2007)**

Before EDMONDSON, Chief Judge, DUBINA and CARNES, Circuit Judges.

PER CURIAM:

Defendants-Appellants, seven Georgia Department of Corrections

("GDOC") correctional officers sued in their individual capacities,[1] bring this

interlocutory appeal of the denial of their motion for summary judgment based on

---

[1]Defendants also were sued in their official capacities. The district court granted Defendants summary judgment on Plaintiff's official-capacity claims. Also named in the complaint were two investigators employed by GDOC Internal Investigations Division. The district court determined that these two defendants were entitled to summary judgment on Plaintiff's failure-to-protect claim. The only order we review in this appeal is the denial of Defendants's qualified-immunity-based summary judgment motion.

2

qualified immunity in Plaintiff-Appellee Charles Doe's section 1983 action for damages, 42 U.S.C. § 1983. We reverse the denial of summary judgment.

This section 1983 civil rights action arises from a series of sexual assaults at Scott State Prison by prison guard Nicholas Tuft during the summer of 2002. On 10 July 2002, an altercation took place between Tuft and inmate John Doe. Tuft claimed that inmate John Doe pushed him; inmate John Doe denied the accusation and claimed Tuft demanded sexual favors. John Doe and Tuft were each interviewed; noting inconsistencies between the statements of inmate John Doe and Tuft, Deputy Warden Jones referred the matter to Warden Scroggy on 12 July 2002. That same day, Warden Scroggy referred the matter to Regional Director Jimmy Sikes, and on 17 July 2002, Sikes forwarded the allegations to the Director of Internal Investigations who, in turn, assigned it to an investigator. No affirmative action was taken by the investigator until 12 August 2002, when the investigator heard that Plaintiff also accused Tuft of sexual assault.

At some point before the end of July 2002, Tuft was transferred to another dormitory at Scott State Prison; Tuft continued to interact with inmates.

In late July and early August 2002, Plaintiff and James Doe, each inmates in the Scott State Prison dormitory to which Tuft had been transferred, claim to have been sexually assaulted by Tuft. In an incident on 29 July, Plaintiff claims that he

3

was touched inappropriately by Tuft. Plaintiff sent a letter complaining about Tuft's misconduct to Captain Gloria Nicholson via the institutional mail system. Unknown to Plaintiff, the next day inmate James Doe also had an encounter with Tuft; James Doe sent a letter to Warden Scroggy via the institutional mail system asking for help. On 1 August, Tuft forced James Doe to perform oral sex on him by threatening to accuse James Doe of assaulting an officer; James Doe sent another letter of complaint to Warden Scroggy. James Doe retained his t-shirt which he believed contained seminal evidence of his encounter with Tuft. And on 2 August, Plaintiff wrote to Warden Scroggy and described two more assaults by Tuft.[2] Plaintiff also believed that Tuft had ejaculated on his t-shirt and saved the evidence.

Shortly after these incidents, Plaintiff and inmate James Doe spoke with each other about Tuft. And Plaintiff and James Doe each related his experience with Tuft to his respective step-father; on 12 August 2002 Plaintiff's stepfather

---

[2]The earliest alleged assault about which Plaintiff or James Doe complained happened on 29 July 2002; the last alleged assault on 1 August 2002. The record fails to establish if and when the letters were received by the defendants to whom they were addressed. Notably, the attacks started and stopped within a four-day period. An element of Plaintiff's section 1983 claim is causation: some evidence must exist that defendants received the letters at a point at which the complained of harm could have been prevented. See Troupe v. Sarasota County Fla., 419 F.3d 1160, 1165 (11th Cir. 2005)("a section 1983 claim requires proof of an affirmative causal connection between the defendant's acts or omissions and the alleged constitutional deprivation."). Even if we were to infer receipt and to infer further that the prison mail system operated with uncommon competence and swiftness, in the light of this tight time line, these letters alone establish no constitutional violation.

met with the director of the GDOC's facilities division and informed the director of Plaintiff's allegations. About one week later, James Doe's stepfather also traveled to Atlanta and informed a representative of GDOC of James Doe's allegations. Each step-father delivered the t-shirt evidence collected by his step-son.

On 12 August 2002, when the investigator assigned to the John Doe matter received word that Plaintiff also accused Tuft of sexual assault and had provided GDOC with clothing he believed to be semen-stained, he interviewed Plaintiff. And on 16 August 2002, the investigator interviewed James Doe. Tuft was also interviewed on 16 August; he denied all allegations made by John Doe, James Doe and Plaintiff. Tuft opted to resign instead of submitting to a DNA test. On 19 August 2002, Warden Scroggy recommended that Tuft be ineligible for rehire because he had resigned during the course of an investigation.

Pursuant to a search warrant, a sample of Tuft's DNA was obtained. When analysis confirmed that Tuft's DNA matched the fluid found on Plaintiff's t-shirt (no fluid had been found on James Doe's t-shirt), Tuft was arrested on three charges of sexual assault against a person in custody, in violation of O.C.G.A. § 16-6-5.1. Tuft later pleaded guilty.

Plaintiff alleged his Eighth and Fourteenth Amendment constitutional rights were violated by Defendants's failure to take reasonable safety measures to protect Plaintiff from Tuft's sexual assault. According to Plaintiff, Tuft was a known risk to inmate safety -- inmate John Doe's allegations predated Tuft's attack on Plaintiff -- and Defendants's failure to protect Plaintiff from this known risk constituted deliberate indifference to Plaintiff's clearly established Eighth Amendment right to reasonable protection. Defendants moved for summary judgment based on qualified immunity. The district court determined that Plaintiff had established a constitutional deprivation and that qualified immunity was unavailable to Defendants. We disagree.

The Eighth Amendment prohibits cruel and unusual punishment; prison officials violate that amendment when they are deliberately indifferent to a substantial risk of serious harm to inmates. Marsh v. Butler County, Ala., 268 F.3d 1014, 1027 (11th Cir. 2001). As we have explained, Farmer v. Brennan, 114 S.Ct. 1970, 1977; 1982-83 (1994), sets out objective and subjective elements that must be shown to establish an Eighth Amendment violation. About the objective elements, a prisoner must first show that an objectively substantial risk of serious harm existed; and once it is shown that an official is aware of this objectively substantial risk, the official must respond to this risk in an objectively

6

unreasonable manner. See Marsh, 268 F.3d at 1028-29.  About the subjective elements, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 114 S.Ct. at 1979.  As Farmer explains, "[t]he Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.'" Id. Failure to protect from an objectively significant risk that should have been -- but was not -- perceived, is no infliction of punishment under the Eighth Amendment.  Id.  So, to show an Eighth Amendment constitutional violation, the summary judgment evidence, viewed in the light most favorable to Plaintiff, must show (i) facts presenting an objectively substantial risk to inmates and awareness of these facts on the part of the officials charged with deliberate indifference; (ii) that the officials drew the subjective inference from known facts that a substantial risk of serious harm existed; and (iii) that the officials responded in an objectively unreasonable manner.

We have some doubt that one uncorroborated and disputed allegation of sexual assault supports the conclusion that prisoners were exposed to an objectively substantial risk of serious harm.  When Plaintiff was assaulted by Tuft, these officials knew only that Tuft had been accused of sexually assaulting inmate

7

John Doe and that Tuft denied the allegations.[3]  Tuft had never before been accused of such misconduct.  As we have said, "[t]he known risk of injury must be a strong likelihood, rather than a mere possibility before a guard's failure to act can constitute deliberate indifference."  Brown v. Hughes, 894 F.2d 1533, 1537 (11th Cir. 1990) (citations and internal quotations omitted).

But even if we accept for summary judgment purposes that the record supported an objectively substantial risk of serious harm, and even assuming *arguendo* that the officials drew the requisite inferences  -- which they deny -- from known facts, no Eighth Amendment constitutional violation is shown unless the official's response was objectively unreasonable.  The district court concluded that the officials response -- reporting John Doe's allegations to respective superiors and the commencement of an investigation by GDOC's Internal Investigation Division -- was an objectively unreasonable response to the danger posed.  But to reach this conclusion, one has to accept the district court's underlying premise: no response to John Doe's allegations would be reasonable

---

[3]Defendants argue that the record shows that John Doe gave inconsistent accounts of his encounters with Tuft and some of these accounts indicated that John Doe acceded to Tuft's persistent requests for sexual favors in exchange for cigars.  At this stage in the proceedings, we accept all well-pleaded factual allegations (with reasonable inferences drawn therefrom) in Plaintiff's favor.

unless it divested Tuft of his guard duties.[4] We cannot accept this premise; to do so would empower any prisoner at any time to dictate prison staffing. Penological interests must factor into the calculus of reasonable responses. See Chandler v. Crosby, 379 F.3d 1278, 1290 (11th Cir. 2004) ("As judges, we lack carte blanche to impose our own theories of penology on the nation's prisons." (Internal citation and quotation omitted.)). It is true, in hindsight, that Tuft's removal at the first suggestion of misconduct likely would have prevented the assault Plaintiff alleges; but "[w]e will not allow the advantage of hindsight to determine whether conditions of confinement amounted to 'cruel and unusual' punishment." Purcell ex rel. Estate of Morgan v. Toombs County, GA, 400 F.3d 1313, 1320 (11th Cir. 2005).

The district court dismissed the adequacy of the investigatory process because, without additional affirmative measures to ensure safety, the possibility of another attack by a possibly predatory guard loomed pending the investigation. We think the district court misapprehended the deliberate indifference standard; we cannot say that the immediate commencement of an investigatory process into

---

[4]Plaintiff argues that GDOC policy and procedure required removal of a guard accused of sexual misconduct from contact with the inmate population. But even if Plaintiff cites correctly GDOC policy -- a point disputed by Defendants -- "failure to follow procedures does not, by itself, rise to the level of deliberate indifference because doing so is at most a form of negligence." Taylor v. Adams, 221 F.3d 1254, 1259 (11th Cir. 2000).

unsubstantiated and contested accusations constituted an indifferent and objectively unreasonable response to John Doe's claims.

Because we conclude that Plaintiff failed to show a constitutional violation, we need not proceed further to consider the applicability of the defense of qualified immunity.

**REVERSED.**